HENRY CLARK BRIDGERS v. J. I. BEAMAN ET AL.

(Filed 11 September, 1912.)

1. Railroads — Subscriptions of Stock — Deeds and Conveyances— Escrow — Consideration — Location of Depot — "On" Certain Town Limits—Evidence—Contracts.

When a deed to lands is given for a subscription to the stock of a railroad company in the course of constructing its lines, placed in escrow, to be "null and void" if the grantee "fails to construct a depot on the southern limits of H," a small town, and

where the grantor owned other lands: *Held*, in an action to compel the delivery of the deed, that, construing the word "on" as meaning "near to" the southern limits of the town, the provision upon which the delivery of the deed was made to rest was not complied with by the grantee locating the depot 1,450 feet from the southern boundary, when, from the size of the town, this location placed the depot 100 feet from its eastern boundary, within 300 feet of the northern boundary, thus locating it in the northeastern part of the town.

## 2. Same—Town Charter.

A provision in a deed to lands given for subscription to stock in a railroad, placed in escrow to be delivered when a line of the railroad, in the course of construction, should locate its depot "on the southern limits" of a named town, the location of the "southern limits of the town" is found by referring to the charter in force at the time of the deed, and not to that named in a subsequent charter.

APPEAL by plaintiff from *Justice, J.,* at February Term, 1912, of GREENE.

The plaintiff, having under consideration the building of a railroad from Farmville to Snow Hill or Hookerton, was offered inducements by parties at both places. Among them was J. I. Beaman, who offered and subscribed to pay $1,100 in consideration that the road was constructed to Hookerton and *a depot constructed on the southern limits of the town of Hookerton by 29 March, 1908;* that in consideration of the inducements offered by the said Beaman and others, it was decided to build the road to Hookerton, and the subscriptions of the said Beaman and others were so accepted by the plaintiff; and in consideration of the subscriptions of the said Beaman and others, the construction of the said railroad to Hookerton was undertaken and begun; that the said Beaman concluded to pay a part of his subscription in money and a part in land, and executed the deed set out in the pleadings, of date 11 April, 1906, conveying land to plaintiff; that said deed was deposited with a committee, the defendants, to be delivered to plaintiff when he had constructed the railroad and established the depot he had agreed to. The grantor, Beaman, to more fully protect himself and to insure the construction of the depot on the southern

limits of Hookerton, put the following clause in said deed: "to be null and void if said Henry Clark Bridgers (the plaintiff) fails to construct a depot on southern town limits of Hookerton, and build a railroad from Farmville to the depot in Hookerton by 29 March, 1908." The said Beaman owned land on the southern limits of Hookerton. Under the foregoing circumstances the deed was executed and placed in the hands of the committee for future delivery, as events should determine. The plaintiff constructed a depot in Hookerton and built a railroad from Farmville to the depot in Hookerton before 29 March, 1908, and demanded of the committee, the defendants, the possession of said deed; they refused to give plaintiff possession of said deed, and the plaintiff brings this action against them to compel them to do so.

The town of Hookerton has had two charters, one granted in 1867 and the other in 1907. According to the charter of 1867, the depot is located within 300 feet of the northern boundary of Hookerton, within 100 feet of its eastern boundary, about 1,450 feet of the southern boundary at the nearest point, and the surveyor, who was introduced as a witness by the plaintiff, testified that the depot was not on the southern limits at all, according to the charter of 1867.

The defendant paid the part of the subscription which was to be paid in money, but resisted the delivery of the deed, upon the ground that the plaintiff had not constructed the depot on the southern limits of Hookerton.

At the conclusion of the plaintiff's evidence, his Honor sustained a motion for judgment of nonsuit, and the plaintiff excepted and appealed.

*J. L. Bridgers for plaintiff.*
*Jarvis & Blow for defendant.*

ALLEN, J. The plaintiff and the defendant have made the location of the depot on the southern limits of Hookerton material, because they have stipulated that the deed shall be void if it is not so located, and the reason the defendant insisted on this provision is apparent.

The defendant owned land on the southern limits of Hookerton, which was a small town, and as it was anticipated that its population and wealth would increase after the construction of the railroad, he was desirous of having the depot located on his side of the town, so that business might be attracted in his direction instead of away from him.

The deed was delivered in escrow in 1906, and we agree with his Honor that the southern limits of Hookerton then in existence, under the charter of 1867, are those referred to; but if it was otherwise, in our opinion, based upon the map, the southern limits under the charter of 1907 are, in so far as they affect the controversy between the plaintiff and the defendant, substantially the same as under the charter of 1867.

The determination of the question presented to us depends, therefore, on the location of the depot and whether it can be said to be *on* the southern limits.

The word "on" has various meanings, dependent upon the purposes for which it is used. Webster says: "The general significance of *on* is situation, motion, or condition with respect to contact or support beneath; as: At or in contact with the surface or upper part of a thing and supported by it. To or against the surface of. At or near; adjacent to—indicating situation, place, or position"; and the Century: "In a position above and in contact with; used before a word of place indicating a thing upon which another thing rests or is made to rest. In a position so as to cover, overlie, or overspread. In a position at, near, or adjacent to; indicating situation or position, without implying contact or support. In or into a position in contact with and supported by the top or upper part of something."

Adopting the definition most favorable to the plaintiff, "near to," we are of opinion, when all the circumstances are considered, that the plaintiff has not located the depot *"on"* the southern limits.

The only witness introduced by the plaintiff, and who surveyed all the lines under an order of court, says that the depot is not on the southern limits as contained in the charter of 1867, and while, if distance alone controls, the depot may be

said to be near those limits, it would not convey this impression when the size of the town and the location of the other limits are considered. The town of Hookerton is a small town, and the distance from the northern to the southern boundary is only about 1,750 feet. The depot is within 100 feet of the eastern boundary, within 300 feet of the northern boundary, and 1,450 feet from the southern boundary, which would seem to locate it in the northeastern part of Hookerton and not on its southern limits.

We conclude that the plaintiff, upon his own evidence, has failed to comply with the condition in the deed, and is not entitled to recover. No question is raised by either party as to the legality of the contract.

Affirmed.